# Huston's Appeal.

1. S. had a judgment against A. and F. his surety. H. held the next lien against F., C. as surety for F. had paid a judgment against F. and himself. F.'s land was sold and S. paid by the sheriff from the proceeds, he assigned his judgment to H. F. assigned to C. his interest as surety of A. in the judgment of S. *Held*, that H. was entitled to be subrogated to the judgment of S. in preference to C.

2. Where one creditor has a judgment against principal and surety, and another has a judgment against the surety, if the creditor of the two collect his judgment from the surety the other creditor is entitled to his judgment.

3. H. having a lien on the land of F., which was taken to pay S., would be entitled to be subrogated to the judgment of S.

4. H. was entitled to subrogation so soon as F.'s land paid the judgment of S., and F. could not assign his interest in the judgment to the prejudice of H.

5. Harrisburg Bank v. German, 3 Barr 300, overruled; Gearhart v. Jordan, 1 Jones 325, Lloyd v. Galbraith, 8 Casey 103, Neff v. Miller, 8 Barr 347, recognised.

[Huston's Appeal.]

October 30th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Indiana county:* In Equity: No. 224, to October and November Term 1871.

On the 7th of May 1868, a judgment by confession upon warrant of attorney for $271.67, was entered in favor of Conrad Sylvis against Adam Titterington and F. Hollen, Hollen being surety for Titterington. On the 17th of October 1868, Harvey J. Huston and Samuel M. Huston obtained a judgment against Hollen for $2235.00. At the same time R. R. Clawson was endorser on a note for Hollen to the First National Bank of Indiana; the note being unpaid and protested, the bank recovered judgment against Clawson to April Term 1869, for about $1200, and his property was levied on in satisfaction of the judgment. On the 2d of April 1869, Hollen's real estate was sold by the sheriff. Out of the proceeds of the judgment, the sheriff on the 17th of April paid to Stewart & Clark, the attorneys of Sylvis, $302.79 in full of his judgment and interest.

The Hustons received but $1425 of their judgment.

Sylvis then gave them the following paper:—

"I, Conrad Sylvis, do hereby acknowledge to have received from Stewart & Clark three hundred and two dollars and seventy-nine cents, the amount in full received by them, and as F. Hollen was the surety of A. Titterington in this judgment and entitled to subrogation in this case, and as Samuel M. and Harvey J. Huston are the first lien-creditors against the said Hollen, I do hereby transfer, assign and set over this judgment to them, without recourse to me, so that the same may stand for their use against Adam Titterington. April 22d 1869.

"CONRAD SYLVIS."

- Hollen filed the following paper, with the records of the judgment Sylvis *v.* Titterington and Hollens:—

"For value received, I do hereby assign and transfer unto Richard R. Clawson all my right and interest in the above-stated judgment arising from the facts that I am bail in the same, and that the same was paid to the said plaintiff out of money made out of my real estate, and direct that the said Richard R. Clawson be subrogated to my rights in the same, and whatever money the said Clawson may receive by virtue of the assignment is to be a credit on my note in the First National Bank of Indiana, Pa., upon which said Clawson is an endorser, and for which the said bank has procured a judgment against him, and issued an execution.

"June 3d 1869.                                         F. HOLLEN."

[Huston's Appeal.]

On the 15th of June 1869, Clawson presented a petition to the court setting forth the foregoing facts so far as they related to his interest, and prayed the court to grant a rule on Titterington to show cause why Clawson should not be subrogated to the rights of Sylvis in the judgment, and be authorized to issue an execution against Titterington.

On the 28th of September the Hustons were permitted to become parties to the proceedings under the rule, and on the same day they filed an answer setting forth the facts, showing their interest, and prayed the court to dismiss Clawson's application, and subrogate them to the rights of Sylvis in the judgment.

On the 31st of July 1871, the court made the rule of Clawson absolute, and subrogated him to the judgment of Sylvis.

Hustons appealed and assigned the order of the court for error.

*Stewart & Clark*, for appellants.—If one creditor has a right to go upon two funds, and another creditor upon one only, having both the same debtor, the former creditor shall take payment from that fund to which he can resort exclusively: Story's Eq., § 643; Brightly's Eq. 183; Lloyd *et al. v.* Galbraith, 8 Casey 103; unless some supervening equity changes or modifies his rights: Story's Eq., § 645. Where it appears that B. has an equitable claim upon A. for payment of the debt, then the principle applies with the same force as in cases where the double fund is owned by the same person: Brightly's Eq., § 185; Story's Eq., § 643-644; Sterling *v.* Brightbill, 5 Watts 229; Ebenhardt's Appeal, 8 W. & S. 327; Neff *v.* Miller, 8 Barr 347; Gearhart *v.* Jordan, 1 Jones 325.

*H. W. Weir* (with whom were *A. W. Taylor* and *J. M. Coleman*), for appellee.—Hollen's assignment followed by his application to the court on the 15th of June 1869, vested in him a full and complete right to subrogation which cannot be interfered with: Harrisburg Bank *v.* German, 3 Barr 300; Fink *v.* Mehaffy, 8 Watts 384; McGinnis's Appeal, 4 Harris 445; Lloyd *v.* Galbraith, 8 Casey 103.

The opinion of the court was delivered, January 9th 1872, by

WILLIAMS, J.—It is clear that Hollen was entitled to be subrogated to the judgment of Sylvis as against Titterington for whom he was surety. And if his right of subrogation was merely a personal one, it passed to Clawson by the assignment, and the appellants were not entitled to be subrogated to the judgment as against him. But if they were entitled to subrogation as against Hollen, then they were entitled to subrogation as against Clawson, the appellee. The court below decided the question in favor of the appellee on the authority of The Harrisburg Bank *v.* German, 3

Barr 303. That case is in all respects like the present, and, if it is to be regarded as authority, is decisive of the appellee's right to subrogation under the assignment. But the decision there, as it seems to us, was not only modified by the subsequent cases of Neff *v.* Miller, 8 Barr 347, and Gearhart *v.* Jordan, 1 Jones 325, but virtually overruled. The doctrine of these latter cases was subsequently recognised in Lloyd *v.* Galbraith, 8 Casey 103, where it was said, subrogation may indeed be admitted in some cases where the two funds belong to different persons, if the fund not taken be the one in equity primarily liable. Thus, where one creditor has a judgment against principal and surety, and another has a judgment against the surety alone ; if in such a case, the creditor of the two collect his debt from the surety, the other creditor is entitled to the use of his judgment. It is true that the case of The Harrisburg Bank *v.* German was not directly overruled in either of the cases cited, and it differs from them in the fact that there the debtor had assigned his right of substitution to a judgment-creditor other than the one who claimed to be subrogated. But this, as it would seem, is an immaterial circumstance, for if the surety's right of subrogation is a personal one, then his judgment-creditors are not entitled to be substituted to it on any principle of equity, and can only claim the right in virtue of an express assignment or transfer. If then the case of The Harrisburg Bank *v.* German has not been directly overruled, the doctrine of that case has been so far shaken by the subsequent decisions to which we have referred, that the question arising here must be regarded as an open one, which we are at liberty to determine on principles of equity and justice, unembarrassed by the decision in that case. Why then were not the appellants entitled to be subrogated to the equitable rights of Hollen under the judgment for which he was surety ? The proceeds of his real estate on which their judgment was a lien, were appropriated to its payment, and as against their judgment-debtor, the appellants were clearly entitled to the proceeds thus applied, and would have received them but for the superior legal right of Sylvis under the prior lien of his judgment. It is true that the appellants' right of subrogation depends on the equity of Hollen, but, as between them, their equity is superior to his. If then the fund which they would otherwise have received, has been applied to the payment of the judgment for which he was surety, on what principle of equity or justice could he claim subrogation to the judgment which has taken the fund to the prejudice of the appellants, and be allowed to pocket its fruits, leaving their judgment against him unpaid ? If they had had no lien on the fund applied to the payment of the judgment, then they would have had no equity to be substituted to the rights of the surety under it. But having a lien on the fund, they would be entitled to sub-

[Huston's Appeal.]

rogation as against Hollen on the plainest principles of equity, and to decree otherwise would shock all sense of justice.

Hollen's right to subrogation as against the appellants can be maintained only on the ground that it is a personal right which he may dispose of as he sees fit. But it is not a mere personal right, if his judgment-creditors are entitled to be subrogated to it, as ruled in Neff v. Miller. If it is a mere personal right, which he may waive or assign at will, then his judgment-creditors could only claim it by assignment or transfer. But the cases cited clearly show that they are entitled to it on principles of equity and good conscience. And if so, the right to subrogation attached the instant that the proceeds of the sale of Hollen's real estate were applied to the payment of the judgment against him as surety, and could not be defeated or set aside by his subsequent assignment. His equity was subordinate to the equity of the appellants, and therefore the assignment of his right of subrogation to the appellee was of no avail as against the superior equity of the appellants. It is evident that the court below would have so decided if the question had been regarded as an open one.

> Decree reversed at the costs of the appellee, and record remitted, with instructions to enter decree in favor of the appellants.

AGNEW, J., dissented.